RUBERT v. RUBERT.

ESTATES OF DECEDENTS—WILLS—ADEMPTION OF DEBT.

A father executed an agreement providing that, in consideration of services theretofore rendered by his son, the latter
should have certain real estate at the father's death, or, in
lieu thereof, the sum of $5,000. Subsequently the father
made a will giving $5,000 to the son and specified amounts to
the other children, and providing for a division of the real
estate among all of the children. He then assigned certain
personal property to the children upon substantially the same
basis as in the will. The son knew of the will and assignment, and, after the father's death, accepted and receipted
for his share of the personalty thereunder. He afterwards
presented a claim against the father's estate for services,
based upon the contract first mentioned, and a bill was
filed for a construction of the several instruments, and to
enjoin the prosecution of the claim. *Held*, on a consideration
of the evidence, that the acceptance by the son of the provision so made for him operated as a satisfaction of his claim

Appeal from Livingston; Dodds, J., presiding. Submitted April 18, 1901. Decided May 7, 1901.

Bill by Thorne Rubert against Seth B. Rubert, Mary
Porter, and Pauline Rubert to stay a suit at law, to construe a will and an assignment, and to quiet title. From
a decree for complainant, defendant Seth B. Rubert
appeals. Affirmed.

*Russell C. Ostrander*, for complainant.

*Watson & Chapman*, for appellant.

MOORE, J. Benjamin H. Rubert died in August, 1898.
The defendant Pauline Rubert is his widow, and the stepmother of his children. The other parties to the suit are
his children. In December, 1892, it is claimed by Seth
Rubert that his father made and executed to him a paper,
the material portions of which read as follows:

"This indenture, made this date between Benjamin H. Rubert, of Howell, Livingston county, Michigan, party of the first part, and my son Seth B. Rubert, of the same place, party of the second part, for the valuable consideration of services rendered to me from the time my son Seth B. Rubert was 21 years old up to date, which I consider worth to me five thousand dollars ( $5,000.00), and I have this day sold the following pieces of land situated in the townships of Howell, Genoa, and Osceola, Livingston county, Mich., to wit:  *  *  *  My son is not to have the possession of the same pieces or parcels of land mentioned on the other side of this sheet of paper until after my death, and my son Seth B. Rubert is to keep this strictly confidential until after my death, or this contract will be null and void.   I also reserve the right to sell or rent any or all of said land to whom I see fit, but, in case I see fit to sell or rent any of the described land, or all of it, I am to pay to my son Seth B. Rubert, at my death, $70.00 per acre for all the land sold, rented, or disposed of, for the work he did for me from the time he was 21 years old to date; and, in case this contract is not fulfilled by me or by my heirs or by executors, then my son Seth B. Rubert is to get $5,000.00 out of my personal property for his labor from the time he was 21 years old to date, which he has not had pay for.   The above-described land is all I own in Howell, Osceola, and Genoa, Livingston county, Michigan."

In August, 1898, the elder Rubert made a will, giving to his wife $1,000, some personal property, and the use for her natural life of an 80-acre farm, which is the same farm described in the paper of December, 1892.   He gave to his son Seth $5,000 and two village lots.   To his son Thorne he gave a promissory note he held against him and $2,000.   To his daughter, Mary Porter, he gave $3,000.   He further provided that, upon the death of his wife, the farm should be equally divided between his children, and that the residue of his property should be divided between them equally.   The specific legacies made by the will practically disposed of all the estate of Mr. Rubert except the farm; and if the claim of Seth Rubert, hereafter mentioned more in detail, was allowed and paid, there would not be enough of the estate to pay these

legacies. To avoid any question about the widow taking under the will instead of under the statute, on the next day after the will was made Mr. Rubert assigned to his three children mortgages and other personal property, and provided for its conversion into money, and for its appropriation among the three children upon the same basis as in the will, except that he provided, if the personal property realized more than $10,000, it should be divided between the children upon the basis of five, three, and two.

When the will was made and the assignment was made, Seth Rubert knew all about them. The assignment, and the great bulk of the personal property mentioned in the assignment, were delivered to and kept by him until his father's death. August 29, 1898,—the same month the father died,—the children, the widow, and the special administrator got together, and divided nearly all of the personal property; the widow receipting to the special administrator for her $1,000. Mary Porter receipted for $3,148.09, Thorne for $2,148.09, and Seth for $5,148.09. August 1, 1899, Seth Rubert presented a claim against the estate of his father for services performed by himself and wife for his father from December, 1878, to August, 1898, $10,000. This claim was rejected. He appealed to the circuit court. While that appeal was pending, this bill was filed to stay the proceeding at law, to obtain a construction of the will, the assignment made to the children, the paper of December, 1892 (the genuineness of which is questioned by some of the parties), and to secure its cancellation, and to quiet the title to the real estate, and to determine that Seth had no title to the real estate.

The interests of the complainant, the widow, and Mrs. Porter are identical. The case was heard in open court, and a decree was rendered as prayed for in the bill. The case is brought here by appeal. The questions involved are almost wholly questions of fact, which it would not profit any one to discuss at length. We think it is estab-

lished by the great weight of testimony that, when the father made the will and the assignment of the personal property, he understood, and Seth understood, he was making provision for the payment of any claim Seth might have against him, and that, when Seth accepted the provisions so made for him, the claim was canceled.

The decree is affirmed, with costs.

HOOKER, LONG, and GRANT, JJ., concurred. MONTGOMERY, C. J., did not sit.